# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS  DIVISION

Acadian Homecare, L.L.C.                              Civil Action No. 06-577

versus                                        Judge Tucker L. Melançon

Michael O. Leavitt, Secretary of              Magistrate Judge Mildred E. Methvin
the Department of Health and
Human Services


## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant, Secretary
of the Department of Health and Human Services Michael O. Leavitt [Rec. Doc. 11], and
plaintiff's Response in opposition thereto [Rec. Doc. 15] and Amended Reply [Rec. Doc.
20].   Plaintiff, Acadian Homecare, LLC, has also filed a Motion for Summary Judgment
[Rec. Doc. 12], to which defendant filed a Response in Opposition [Rec. Doc. 14].

_____Plaintiff, Acadian Homecare, L.L.C. ("Acadian"), is a home health agency located
in Lafayette, Louisiana participating in the Medicare program.[1]  Defendant is the
Secretary of the Department of Health and Human Services, Michael O. Leavitt, who as
the federal official vested with primary responsibility for oversight of the Medicare
program ("Medicare") is responsible for decisions of the Department of Health and

---

[1]

By virtue of a merger effective  December 31, 2002, Acadian Homecare, L.L.C. is the successor
in interest to Acadian HomeCare, Inc., the entity that was the actual subject of the Provider
Reimbursement Review Board decision at issue

Human Services Provider Reimbursement Review Board (hereinafter "PRRB").  This case involves the denial of plaintiff's Medicare Part A claims relating to costs claimed for Medical Director fees.

## I. STATUTORY & REGULATORY BACKGROUND

The Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*., provides payment for covered medical services primarily on behalf of eligible aged and disabled  persons.   The statute consists of two main parts: Part A, commonly known as "Hospital Insurance Benefits," which generally authorizes payment for primary institutional care such as hospitalization, skilled nursing care and home health agency services provided by hospitals and other institutions or agencies, including home health agencies; and Part B, which  authorizes supplemental medical insurance for covered physician services and certain other  medical benefits.  42 U.S.C. §§ 1395c through 1395i-4.  The reimbursement claim at issue in this action is covered under Medicare Part  A for Home Health Agency services pursuant to §§ 1812(a)(3), (a)(1)(i)(B),  1814(a)(1)(i)(C), and 1861(v) of the Social Security Act (hereinafter the "Act"), and regulations  at 42 C.F.R. § 413.1 et seq.  Section 1814 of the Act establish that providers of Home Health Agency (hereinafter "HHA") services shall be reimbursed for necessary and proper costs incurred in providing such services to Medicare beneficiaries.

A home health agency may become a participant in Medicare by entering into a

provider agreement with the Secretary. 42 U.S.C. § 1395x( 0); 42 U.S.C.§ 1395cc. Entities known as fiscal intermediaries act as agents of the Secretary in making payments for services to Medicare providers on behalf of beneficiaries. 42 U.S.C. § 1395h; 42 C.F.R. § 421.103.  Under Medicare Part A, home health agency providers are required to file a cost report with their intermediaries at the end of the fiscal year which reflects actual costs incurred. 42 C.F.R. § 413.64(a).  The intermediary then makes adjustments to provider reimbursement based upon the cost report in accordance with the requirements of the Medicare statute and the regulations promulgated thereunder.

For the period at issue here, namely the cost reporting period ending December 31, 1999, Medicare Part A providers were reimbursed pursuant to 42 U.S.C. § 1395x(v), for the "reasonable cost" of providing services to beneficiaries.  The Medicare statute generally defines "reasonable costs" as "the cost actually incurred, excluding therefrom any part of incurred costs found to be unnecessary in the efficient delivery of needed health services." *Id.*  As it would be impractical, if not impossible, for the statute to define "reasonable costs" in every instance, the Medicare Act further provides that the Secretary of the Department of Health and Human Services (the "Secretary") to prescribe methods under the Social Security Act for determining the reasonable costs of providing services to Medicare beneficiaries and  promulgate regulations "establishing the method or methods to be used, and the items to be included in determining such costs for various types of classes of institutions, agencies, and services." *Id.* 42 U.S.C. § 1395x(v)(1)(A).

The Secretary's regulations elaborate upon the factors to be included in reasonable

3

costs, and provide that:

> All payments to providers of services must be based on the reasonable costs of services covered under Medicare and related to the care of beneficiaries. Reasonable costs includes all necessary and proper costs incurred in furnishing the services [to beneficiaries].

42 C.F.R. § 413.9(a). The regulations proceed to define "necessary and proper costs" as costs that are appropriate and helpful in maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the provider's activity. 42 C.F.R. § 413.9(b)(2).

The Secretary has rendered additional interpretive guidance relating to the Medicare statute and reimbursement regulations through issuance of the Provider Reimbursement Manual ("PRM").[2] Section 2304 provides that cost information as developed by the provider must be current, accurate and in sufficient detail to support payments made for services rendered to beneficiaries. This includes all ledgers, books, records and original evidence of cost, all of which must be capable of being audited. *Id.*

Section 2127 of the PRM specifically describes the role of professional personnel in the home health agency setting and allowable costs incurred in connection with their

---

[2]

In *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995), the United States Supreme Court recognized that the Secretary cannot be expected to create regulations for every conceivable reimbursement cost situation and that the issuance of manual provisions to provide specific guidance is a "sensible structure for the complex Medicare reimbursement process." *Id.* at 101. While the Court acknowledged that the PRM is not binding law, it found that interpretive rules advise providers how the Secretary will apply the Medicare statute and regulations in adjudicating particular reimbursement claims and are generally followed by agency and judicial adjudicators when reasonable. *Id.* at 101-102.

activities. A home health agency is required to have a group of professional personnel to serve in an advisory capacity to the agency.[3]  *Id.*  The function of this advisory group is to approve and review on a regular basis the agency's policies governing skilled nursing and other health care services.  *Id.*  Payments to physicians for their direct medical services to individual patients are not allowable home health agency costs. *Id.*  The home health agency must maintain adequate records to enable the fiscal intermediary to determine the reasonableness of the compensation paid to a physician or other professional person. *Id.*  At a minimum, these records must contain the following information for each meeting of the advisory group: the date of the meeting, the name and occupation of each participant to whom compensation is paid, the hourly rate or other payment base for each of these individuals, and the number of hour of services rendered by each participant. *Id.*

The fiscal intermediary determines a provider's reasonable cost based upon a cost report that the provider submits annually.  After a provider files its annual cost report, the intermediary conducts an audit and issues a Notice of Program Reimbursement ("NPR") setting forth the amount of reimbursement that the provider is entitled to.  42 C.F.R. § 405.1803.  A provider dissatisfied with a fiscal intermediary's decision may request review by the Provider Reimbursement Review Board ("PRRB"), which hears the case and renders an opinion.  42 U.S.C. § 1395oo(a)-(d).  A decision of the PRRB will become

---

[3]

A medical director is not required but the regulations do require that a group of professional personnel, which includes at least one physician, annually review the agency's policies.  42 C.F.R. § 484.16.

final sixty days after its issuance unless the Secretary, upon request of one of the parties

or *sua sponte*, reverses, affirms, or modifies the decision.  42 U.S.C. § 1395oo(f).

Providers may obtain judicial review of any final decision of the Board or of the

Secretary by commencing a suit in federal district court within sixty days of receipt of

notice of the decision.  *Id.*  In cases such as this, where the issue is whether the PRRB

properly denied Medicare Part  A reimbursement, the standard of review is governed by

42 U.S.C. § 1395oo(f), which incorporates the standards of Section 706 of the

Administrative Procedure Act ("APA").  5 U.S.C. § 706.  Section 706(2)(A) and (B) of

the APA provide that agency actions, findings, and conclusions can only be set aside if

they are "arbitrary, capricious, an abuse of discretion, or not in accordance with law," or

when in a case reviewed on the records of an agency proceeding provided by statute, they

are unsupported by substantial evidence.

## II. FACTUAL BACKGROUND

From the evidence of record, the pertinent facts are as follows.  This case involves

judicial review of the decision of the Department of Health and Human Services Provider

Reimbursement Review Board (hereinafter "PRRB") denying reimbursement for certain

costs claimed by plaintiff under Medicare Part A relating to Medical Director fees during

its 1999 fiscal year under the Medicare Hospital Insurance Program.

The Medicare fiscal intermediary for plaintiff, Palmetto Government Benefits

Administrator (the "Intermediary"), audited Acadian's Medicare cost report for the cost

reporting period from January 1, 1999 to December 21, 1999 and determined that

Acadian had received an overpayment of $58,271 for the fiscal period. A.R. 203-209.

As part of its audit of Acadian's cost report, the Intermediary reviewed Acadian's general

ledger, its listing of all medical directors, the contracts between Acadian and its medical

directors and the related Form 1099s.  A.R. 88.  Acadian had thirteen (13) Medical

Directors, including a Corporate Medical Director (Dr. Harmon) and an Alternate

Medical Director (Dr. Hargroder), to cover seven branch locations.  A.R. 88-89.  Acadian

contracted with the Medical Directors to provide services and the contracts provided for

"on-call fees." A.R. 88-89, 173.  All of the Medical Directors were paid $200 per hour for

oversight and administrative services actually provided to the agency, as well as a

monthly on-call fee of $400.00, except for Dr. Menard who was paid $300 per month and

Dr. Sanchez who did not get on-call pay. A.R. 88-89.

The Intermediary adjusted the plaintiff's costs claimed for Medical Director fees

and Forty-Two Thousand One Hundred and Seventy Dollars ($42,170) in Medical

Directors' fees was disallowed for lack of documentation, unnecessary costs, duplication

of costs and non-allowable lobbying activities. A.R. 88-91, 93-95, 183. [4]  Acadian agreed

with the disallowance of $1,200.00 in expenses for Medical Director Spiller and for 2.5

hours for lobbying activities by Corporate Medical Director Dr. Harmon who was paid

$200 per hour for services. A.R. 33, 51-52, 72, 90, 93, 140.  Thus, the amount of Medical

---

[4]

Palmetto had disallowed therapy fees in its audit report but later agreed with Acadian that the
costs were allowable. A.R. 75.

Directors' fees that remained in dispute was $40,470.00 A.R. 8.

Palmetto issued an NPR dated September 21, 2001 and on March 25, 2002, Acadian appealed the adjustments/disallowance to the PRRB. A.R. 203-207; A.R. 200-202. A hearing was held on the submitted record. A.R. 16-17.  The question before the PRRB was whether the costs claimed for  Medical Directors' services were necessary and proper under 42 C.F.R. § 413.9(b)(2).  On February 3, 2006, in a three-two (3-2) decision, the PRRB found that some of the Medical Directors' fees were neither necessary nor proper and these costs were properly disallowed by the Intermediary.  A.R. 8-10.   Thus, the PRRB denied reimbursement for certain costs claimed by Plaintiff for providing home health services during its 1999 fiscal year under the Medicare Hospital Insurance Program.

By letter dated March 28, 2006, the Administrator for the Centers for Medicare and Medicaid Services (hereinafter "CMS") notified Acadian that he declined to review the PRRB's decision, therefore it was the final decision of the Secretary. A.R. 1. Acadian was authorized to obtain judicial review within 60 days of the date it received the PRRB's decision in accordance with 42 C.F.R. § 405.1877. *Id.*

Plaintiff filed the instant action against the Secretary of the Department of Health and Human Services, seeking judicial review of this final agency decision rendered. Plaintiff seeks the reversal of the PRRB's decision that costs claimed for Medical Directors' services were not necessary and proper; the amount  disallowed by the fiscal intermediary and affirmed by the PRRB totaled $40,470.00.

Now, on summary judgment, the government argues that because there are no genuine issues of material fact in dispute, and because the PRRB's decision is clearly supported by substantial evidence, and is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, the decision should be affirmed and the United States' summary judgment should be granted.  On cross-motion, plaintiff argues that the PRRB erred as a matter of law in finding that the costs claimed for Medical Directors' services were not necessary and proper under 42 C.F.R. § 413.9(b)(2) as its conclusion is not supported by substantial evidence in the record.

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc).  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a

genuine issue for trial.[5] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter

---

[5]

 Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56©;

*Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of

material fact, however, the court must be satisfied that no reasonable trier of fact could

have found for the non-moving party.  *Id.*

## IV. LAW & ANALYSIS

This Court is called upon to review a decision the Department of Health and

Human Services Provider Reimbursement Review Board ("PRRB"), denying

reimbursement for certain costs claimed by Plaintiff during its 1999 fiscal year under the

Medicare Hospital Insurance Program based on a determination that under the Medicare

statute and Federal regulations, $40, 470.00 claimed for Medical Directors' services in

Acadian's cost report were either unnecessary or otherwise improper.

### A.      *Standard of Review*

Judicial review of Medicare decisions rendered by the Secretary or the PRRB is

governed by standards established by the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701-706.  *See* 42 U.S.C. § 1395oo(f)(1); *Thomas Jefferson Univ. v. Shalala*,

512 U.S. 504, 512 (1994).   Under section 706(2)(A) and (B) of the APA, judicial  review

is limited to whether the PRRB decision was arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with the law; or when in a case reviewed on the records of

an agency proceeding provided by statute, they are unsupported by substantial evidence.

*Reliable Home Health Care, Inc., v. Shalala*, 255 F. Supp 2d 575, 577  (E.D. La. 2001).

"Substantial evidence" on the record taken as a whole is more than a mere scintilla, it is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Girling Health Care, Inc.*

*v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996)*;  Muse v. Sullivan*, 925 F.2d 785, 789 (5th

Cir. 1991).  In determining whether substantial evidence exists, a court does not re-weigh

the evidence, retry the issues, or substitute its own judgment.  *Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir. 1994).  "The Agency decision must be upheld as long as there is a

rational basis for the Secretary's interpretation of the statute and the regulations." *Sun*

*Towers, Inc. v. Heckler*, 725 F.2d 315, 325-326 (5th Cir. 1984)

> The Fifth Circuit has further articulated:
>
> APA arbitrary and capricious review is narrow and deferential, requiring
> only that the agency articulate a rational relationship between the facts
> found and the choice made.  Under this deferential standard, the Court may
> not substitute its own judgment for that of the agency.  If the agency's
> reasons and policy choices conform to minimal standards of rationality,
> then its actions are reasonable and upheld.

 *City of Abilene vs. EPA,* 325 F.3d 657, 664 (5th Cir. 2003). It is well established that an

agency's interpretation and construction of its own regulations "must be given

'controlling weight unless it is plainly erroneous or inconsistent with the regulation'"

itself.  *St. Francis Health Care Center v. Shalala*, 205 F.3d 937 (6th Cir. 2000)(citing

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *Good Samaritan Hospital*

*v. Shalala*, 508 U.S. 402, 404 (1993); *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Bowles v.*

*Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).  "Because applying an agency's

regulation to complex or changing circumstances calls upon the agency's unique expertise

and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991).

Judicial review of these decisions is thus limited to determining whether there is a "rational basis" for the Secretary's interpretation of the statute and regulations. *Sun Towers, Inc.*, 725 F.2d at 325. This Court's review of the Secretary's decision is a "narrow one" and plaintiff  must satisfy the "difficult burden" of proving that the Secretary's decision should be overturned.  *Sun Towers, Inc.,* 725 F.2d at 325.   A provider has the burden of proving that the costs it claims come within the meaning of "reasonable costs" as defined by the Medicare statutes and regulations.   *Sacred Heart Hospital v. Bowen*, 652 F.Supp. 171, 176 (E.D. Pa. 1986).   The burden of demonstrating fault with a decision of the Secretary regarding Medicare reimbursement also lies with the provider challenging that decision.  *St. Mary of Nazereth Hospital Center v. Schweiker*, 718 F.2d 459, 466 (D.C. Cir. 1983).

### B.     *The PRRB's Decision to Disallow Medical Director Fees*

It is undisputed that the Medicare statute and regulations mandate that Medicare Part A providers like Acadian be reimbursed for reasonable costs of providing services to beneficiaries.  42 U.S.C. § 1395x(v); 42 C.F.R. § 413.9(a).  Section 413.9(a) of the regulation elaborates on the "reasonable cost" principle of reimbursement by stating that reasonable cost includes all necessary and proper costs incurred in furnishing the services.

13

"Necessary and proper costs" are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities, and are usually common and accepted occurrences in the field of the provider's activities.  42 C.F.R. § 413.9(b)(2).

Plaintiff argues that the PRRB erred as a matter of law in finding that the costs claimed for Medical Directors' services were not necessary and proper under 42 C.F.R. § 413.9(b)(2).   Plaintiff argues that the Medical Directors were not a luxury but a necessity to its goal to provide quality patient care to its patients pursuant to the CMS Provider Reimbursement Manual (PRM) § 2102.2.   Ensuring that each of its branch offices had a physician on call to address any emergent patient situations advanced this goal consistent with the regulatory requirement that home health agencies establish policies addressing emergency care in conjunction with "appropriate representation from other professional disciplines." 42 C.F.R. § 484.16.

Additionally, while acknowledging that the PRRB decision found no nexus between the goal of agency-wide consistency in patient care and the  thirteen medical directors for seven locations, plaintiff claims that the PRRB noted that the arrangement did not exceed cost limits and that the cost per visit was in fact in line with the Plaintiff's peers.  *Id*.  Plaintiff argues that not only are the medical director costs reasonable but they are also necessary.  Plaintiff challenges  that the PRRB decision was solely based on a determination that there was not a need for 24 hour on-call service by multiple medical directors who were paid a flat monthly fee for the service, a determination which plaintiff

argues was not advanced by the Intermediary and so makes the PRRB decision based upon this rationale in itself arbitrary and capricious.

In sum, plaintiff contends the PRRB decision should not be upheld because the record lacks substantial evidence to support the decision. To the contrary, plaintiff alleges that the record reflects evidence indicating that the Medical Directors' fees were reasonable for the services provided; that in the interests of quality patient care, the services were necessary; and that, contrary to the Intermediary's argument, the on-call physicians' services did not duplicate those of the Registered Nurse Director of Nursing. Finally, plaintiff posits that as there are no statutes, regulations, or CMS interpretations limiting the number of medical directors for a home health agency, or the scope of services that may be provided by medical directors, or specifically prohibiting the use of physicians to provide on-call medical services for home health agencies, the PRRB could not and did not base its decision on any regulation or interpretation of any regulation, thus is plainly erroneous and is not rationally supported.

The government alleges that the PRRB's decision to disallow medical director's fees as unnecessary and improper has a rational basis and is supported by substantial evidence in the administrative record. The government contends that the PRRB properly examined the nature and scope of the services Acadian's Medical Directors provided, and in doing so, reasonably determined that documented costs associated with the Medical Directors' oversight and administrative duties were properly allowed. However, when it

15

came to the Medical Directors "on-call fees," the PRRB considered and rejected
Acadian's explanation as to they were reasonable and necessary.  The PRRB was not
persuaded by Acadian's position that on-call services were appropriate because of a
hypothetical situation where the patient's treating physician would be unavailable and an
immediate response to an urgent medical matter would be needed, and concluded that it
was not proper or necessary for the home health agency to substitute its Medical
Director's professional medical services for those of the attending physician with respect
to direct patient medical services.  Moreover, the government alleges that the PRRB's
decision was based on a reasonable determination that the "on-call services" for which
the Acadian medical directors were purportedly being paid were in fact direct patient care
services, which are not allowable home health agency costs, and not the administrative
type of services which are properly reimbursable home health agency costs.

The Court notes that in the home health agency setting, the Medical Director
Services, paid under Part A of Medicare, are purposed to be administrative in nature.  42
CFR § 484.16.  PRM Section 1704 sets out the duties of the medical director as helping to
establish and assure that the quality of medical care provided by the agency is appraised
and maintained.  The medical director also advises the chief executive officer on medical
and administrative problems, and investigates and studies new developments in medical
practices and techniques. *Id.*   In short, medical directors in the home health agency
environment perform oversight and administrative duties and not direct patient medical
services.  Moreover, PRM Section 2127, which describes the role of professional

personnel in the home health agency setting and allowable costs incurred in connection with their activities in providing services to beneficiaries, clearly states that payment to physicians for their direct medical services to individual patients, which are paid to physicians through Part B of Medicare, are not allowable home health agency costs.

In reviewing the record, the Court finds that the PRRB's decision was made on the basis of and is supported by substantial evidence that would reasonably be accepted as adequate to support the disputed conclusion.  The PRRB relied on Acadian's own explanation of precisely what an "on-call" medical director would do if called upon, and from there reasonably determined that such does not constitute the administrative services contemplated within the context of the medical director role.  In reviewing Acadian's description of these services the PRRB decided that if they ever actually had been called upon, the on-call physicians would have been in essence replacing the direct-care service which would otherwise have been provided by the patient's own physician, therefore providing direct patient care services, not administrative ones.  On this reasoning, the Court finds that because the regulations expressly state that these services are not reimbursable by Part A in the home health context,  the Board was entirely reasonable and rational in disallowing them.

In sum, the Court finds that the PRRB had a rational basis for excluding the on-call costs because had the on-call physicians been called on to do what plaintiff stated they were purposed to do, those duties would not have been the sort of administrative

duties the PRM and the regulations contemplate for which payment may be appropriate under Part A, but instead would have been direct patient care services which are not allowable home health agency costs.  The Court also finds that it is reasonable and rational as well to disallow those costs given that no such on-call services were ever documented by the agency.

Thus, the Court concludes that the record shows substantial evidence supporting the PRRB's decision and that decision must be upheld because there clearly is a rational basis for it.   The PRRB acted consistent with the Medicare statute, regulations and agency guidance, in disallowing for Medical Director's services costs incurred for because the costs were either not documented or were not necessary and proper.  Because it is neither plainly erroneous nor inconsistent with any regulation, the PRRB's decision is worthy of deference by this Court..

## V. CONCLUSION

Based on the record before the Court and the reasons stated herein, the Court finds that the PRRB's decision is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, the Medicare statute and/or Federal regulations.  Therefore, the United States is entitled to judgment as a matter of law.   Accordingly, defendant's Motion for Summary Judgment [Rec. Doc. 11] will be GRANTED and plaintiff's Motion for Summary Judgment [Rec. Doc. 12] will be DENIED.